## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

KHALID AUSTIN MAHAMMEND,

    Plaintiff,

v.

                        Civil Action No.: JKB-23-528

WARDEN DAVID GREEN,
MAJOR N. HAGGIE,
FA ADISA,
CAPT. KENYA SINKLER,
SYNESSA JEFFERSON,
BALTIMORE CITY CORR. CENTER,
JARVIS,
TUCKER,

    Defendants.

### MEMORANDUM OPINION

Pro se Plaintiff Khalid Austin Mahammend, who is currently incarcerated at Eastern Correctional Institution, filed a complaint pursuant to 42 U.S.C. § 1983. Defendants Warden David Green, Major N. Haggie, Facility Administrator Adisa, Captain Kenya Sinkler, Synessa Jefferson, Baltimore City Correctional Center, Jarvis, and Tucker have filed a Motion to Dismiss, (ECF No. 41), which Mahammend opposes. (ECF No. 43.) No hearing is necessary. *See* Local Rule 105.6 (D. Md. 2023). For the reasons stated below, the Motion to Dismiss shall be granted.

### I.    Background

In his complaint Mahammend alleges that on January 18, 2023, he was "lied on and falsely accused of committing an act . . . based on camera footage." (ECF 1 at 3.) He claims he received an infraction after Haggie and Adisa viewed video footage of an incident of an assault on another inmate. (*Id.*) Mahammend alleges that he was not part of the group of people assaulting the victim. (*Id.*) According to Mahammend, Haggie, and Sinkler "made or caused to be made, a statement,

report or complaint of an emergency or alleged the commission of a crime that they . . . knew . . .

to be false." (*Id*. at 5.)

The Notice of Inmate Rule Violation—attached to Mahammend's Complaint—provides

the following narrative:

> On Monday, January 16, 2023, at approximately 5:40 am, BCCC Correctional Officer (COI) Abidakun assigned to the South Wing Upper observed while making routine security Incarcerated Person (IP) Kelly Patrick . . . with a bruised face. IP Patrick was immediate [sic] escorted to the infirmary. Nurse Felicia Nyoa medically evaluated IP Patrick, and confirmed that IP Patrick have [sic] abrasion to the right face, and left palm. Subsequently, IP Patrick wrote an inmate statement that he could not recollect what happened to him.

> BCCC Major Haggie conducted an investigation into IP Patrick [sic] injuries. A review of South Upper Surveillance Camera C69, C70, C71, and C72 revealed that, on Sunday January 15, 2023, IP Patrick was assaulted, and robbed inside his cell (C-3-11). The following IPs listed below participated as seen on Surveillance Cameras C69, C70, C71 and C72.

> Dondi Worthy
> Marquise Copeland
> Jalen Bourne
> Malik Milton
> Khalid Mohammed [sic]
> Trent Correll

> As seen on Camera C70 on Sunday January 15, 2023, at approximately 8:38 pm, IP Dondi Worthy, IP Marquise Copeland, and Jalen Bourne entered IP Patrick [sic] (Victim) cell. Inmate Copeland covered his face in a blindfold style in order to conceal his facial identification. Furthermore, IP Worthy, IP Copeland and IP Bourne remained inside IP Patrick cell . . . for approximately 15 minutes while some other inmates, namely Malik Milton, Khalid Mohammed [sic] and Trent Correll participated by standing in front of IP Patrick [sic] cell door. Thus, preventing IP Patrick (Victim) from exiting his cell.

> Subsequently . . . IP Worthy walked out of IP Patrick (Victim) [sic] with a TV. IP Marquise Copeland kept the TV in his possession until officers recovered it.

> All the IPs involved in the incident that is IP Worthy, IP Copeland, IP Bourne, IP Milton, and IP Mohammed [sic] were recognized by their respective DPSCS identification Card. In addition, properly verified on the Offenders Case Management System (OCMS).

(ECF No. 1-1 at 1.) Mahammend was charged with violating rules 125, 100, 102, and 402. (*Id.*) The Notice of Inmate Rule Violation also notes that anyone "soliciting, conspiring to commit, attempting to commit, or aiding in the commission of a rule violation" is guilty of committing the rule violation. (*Id.*)

Mahammend explains that on January 24, 2023, Hearing Officer Synessa Jefferson found him not guilty of violating Rules 100 and 125, but the witness for the institution, Corporal Jarvis, told Jefferson that she had additional evidence to introduce. (ECF No. 1 at 6.) Jefferson then found good cause to postpone the hearing and "re-try" Mahammend "after the ticket had been dismissed." (*Id.* at 7.) The hearing was postponed to January 26, 2023. (*Id.*)

On January 25, 2023, Sinkler removed herself as "reporting staff" and Haggie became the "new reporting staff." (ECF No. 1 at 7.) When the hearing was held on the following day, Mahammend states that Jarvis "submitted falsified photo evidence to swing the outcome" of the hearing. (*Id.*) Mahammend alleges that either Adisa or Haggie conducted an investigation and admitted that there was no video or photographic evidence to show Mahammend's face or hands because Adisa "was the only . . . person to take suspects photos and he never took any photos of [Mahammend]." (*Id.*) Mahammend was found guilty of violating Rule 102 and he claims the guilty finding violates his right to due process because none of the surveillance video depicts him assaulting anyone. (*Id.*) He claims that Jefferson deliberately denied him a fair hearing and subjected him to punishment without sufficient evidence to support the guilty finding. (*Id.*)

Mahammend attached five Administrative Remedy Procedure complaints ("ARP") to his complaint. (ECF No. 1-1 at 3–11.) The first ARP was filed on January 15, 2023. (*Id.* at 11.) Mahammend asks that the ticket against him be dismissed because "it can't be proven beyond reasonable doubt that I was @ or holding a door @ 8:38 pm." (*Id.*) This ARP was dismissed on

January 20, 2023, with the response stating that "Inmates may not seek relief through the Administrative Remedy Procedure regarding Disciplinary proceeding procedures and decisions." (*Id*.) Thereafter, all of Mahammend's ARPs concerning his infraction were dismissed as repetitive. (*Id*. at 3, 7, 9.) One ARP bearing Haggie's signature dated January 27, 2023, has no decision noted on it. (*Id*. at 5.)

As a result of the guilty finding, Mahammend was confined to segregation for 60 days and lost 90 days of good conduct credit. (ECF No. 1 at 6.) Additionally, the guilty finding resulted in: his security level being raised from medium to max; his ineligibility for parole on March 3, 2024; his being prevented from "transferring into the Department of Labor OSTC for H-Vac BCCC program;" and his ineligibility for a prison job for six to twelve months. (*Id*. at 5–6.) Mahammend adds that the cell to which he was assigned was infested with cockroaches, requiring him to sleep with the lights on. (*Id*. at 6.) He was limited to three showers per week, even though the cell was hot and dirty due to the roach infestation. (*Id*.) He claims he developed a skin rash six days after his arrival in the cell. (*Id*.) He adds that he was deprived of watching television, using the phone, and receiving visits. (*Id*.)

Mahammend has supplemented his complaint seven times. (ECF Nos. 7, 8, 9, 12, 14, 18, 20.) In the first supplement, Mahammend states that the reported facts in the Notice of Infraction are true with regard to the other inmates named, but false as it pertains to him. (ECF No. 7 at 2.) He admits he was inside cell B-3-15 and states that is why he "pled guilty to a 402." (*Id*.) He maintains that the charges for the more serious rule violations were dismissed but were reinstated and he was found guilty based on "falsified photo evidence that was never ever shown to [him]." (*Id*. at 3.) He states that Haggie and Adisa agreed that no photos were ever taken of him and wonders how he could have been found guilty based on photo evidence. (*Id*.) In Mahammend's

4

view, this proves that Jarvis lied and acted in bad faith. (*Id.*) He claims that a second revised Notice of Infraction was issued and he did not receive a copy of it until January 26, 2023. (*Id.* at 6.) He was not permitted to introduce the surveillance video at the hearing, which he maintains violates his right under *Brady v. Maryland*, 373 U.S. 83, 87 (1963). (*Id.*) Mahammend states he was at the victim's cell "after the fact, not during the fact." (*Id.* at 7.) He also claims that Jefferson changed his statement to make it seem as though he was admitting to the rule violations when in fact he was not. (*Id.* at 7, 11.)

In his second supplemental filing, Mahammend includes a February 17, 2023 letter from the Inmate Grievance Office ("IGO"), which describes a grievance Mahammend submitted as "an appeal of the above referenced disciplinary action" wherein Mahammend claimed he was "found guilty of violating inmate rules 102 (commit assault or battery on and inmate) and 402 (enter or be in a location without authorization; leave an assigned location without authorization, etc.)" after a January 26, 2023 hearing. (ECF No. 8-1 at 8.) The grievance was dismissed "as wholly lacking in merit" because Mahammend "failed to establish a claim for which [the IGO] can grant relief." (*Id.*) A provision of Code Md. Regs. ("COMAR") "prohibits an Administrative Law Judge from substituting his or her judgment on factual matters for that of the Hearing Officer as the original trier of fact." (*Id.* (citing COMAR § 12.07.08(B)(1).)

In his third supplement, Mahammend admits he closed the victim's cell door but denies holding it closed. (ECF No. 9 at 2.) He also denies preventing the victim from leaving the cell. (*Id.*) Mahammend adds that he removed his things from the victim's cell but did not take any of the victim's property. (*Id.* at 3.) He alleges that the hearing officer "withheld video footage that shows me and the victim walking with no force to the bathroom to help him clean blood off his body and face." (*Id.*) He states that this is the first time the victim exited his cell after being

robbed and beaten and then asks, "if me and the victim were fighting why weren't my hands a face photographed." (*Id.*) Mahammend claims that he had no marks, bruises, or anything on his hands, face, or body and claims that if he had robbed and assaulted the victim, he would not be escorting him to the bathroom to help him. (*Id.*) Mahammend states that if the camera footage is viewed, many people are seen going into and out from the victim's cell "but were not charged with assault." (*Id.* at 4.) He explains that he "always[s] go[es] in that cell" but "did nothing wrong." (*Id.*) In Mahammend's view, being in a cell does not prove that he individually targeted the victim especially since he is not a gang member. (*Id.*)

Mahammend's fourth and fifth supplements reassert that he was found guilty without any evidence and that the second hearing, where he was charged with similar rule violations after being found not guilty of violating Rule 100, violated double jeopardy. (ECF Nos. 12, 14.) Mahammend also states that he was not Mirandized before the disciplinary hearing, and that his Sixth Amendment right against self-incrimination was violated, and the hearing officer changed his words. (ECF No. 14 at 2.) He adds that he can be seen on the video "leaving with my stuff I had in the victims cell which was only a small net bag." (*Id.*) He explains that the victim's cellmate is "on the Sunni Jumar prayer list and Saturday Tuesday study class list so of course I got my belonging out [sic] the cell" which he describes as his Islamic books and prayer rug. (*Id.*) Mahammend reasons that because the cell was bloody and trashed after the assault and robbery, he decided to remove his belongings. (*Id.*)

Mahammend again reiterates his claims in his sixth and seventh supplements. (ECF Nos. 18, 20.) Mahammend places great weight on the fact that there were pictures taken in connection with the incident and none depict his face and hands. (ECF No. 20 at 1.) He explains that his right hand has dislocated joints in it and his left hand has tattoos of smoke, dice, and flames on it. (*Id.*)

He additionally emphasizes that the video surveillance does not show him assaulting anyone, he was not holding the door during the 15-minute assault, and only came to the victim's cell to see if the victim's cellmate was okay because he is Mahammend's Muslim brother and he also did not want his stuff to get stolen. (*Id.*) He adds that there were no eyewitnesses, no victim statement, and no camera footage and therefore he was not proven guilty beyond a reasonable doubt. (*Id.* at 2.)

Defendants move to dismiss the complaint because Mahammend has failed to exhaust administrative remedies; Baltimore City Correctional Center is not a person amenable to suit under 42 U.S.C. § 1983; the complaint fails to state a claim against the individual defendants; they are entitled to qualified immunity; and, to the extent Mahammend's claims are asserted against them in their official capacity, they are entitled to Eleventh Amendment immunity. (ECF No. 41-1.) Mahammend focuses his Opposition Response on Defendants' assertion that he has failed to exhaust administrative remedies. (ECF No. 43.)

## II.    Standard of Review

To survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). The court may "consider documents attached to the complaint, *see* Fed. R. Civ. P. 10(c), as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic[.]" *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007) (citation omitted). "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient

to prove the elements of the claim. However, the complaint must allege sufficient facts to establish those elements." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted).

## III.    Analysis

### A.    Exhaustion of Administrative Remedies

Defendants raise an affirmative defense that Mahammend has not exhausted administrative remedies regarding his claims against the individual Defendants.   (ECF No. 41-1 at 4–8.) Specifically, Defendants assert that Mahammend did not follow the "three-step process for requesting an administrative remedy" before filing his complaint with this Court.  (*Id.* at 6.)  They add that Mahammend "has failed to pursue his grievances regarding the perceived constitutional violations alleged to have been taken by the named individual Defendants through all steps in the administrative process."  (*Id.* at 8.)

If Mahammend's claim has not been properly presented through the administrative remedy procedure it must be dismissed pursuant to the Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e.  The PLRA provides in pertinent part that:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

Ordinarily, an inmate must follow the required procedural steps in order to exhaust his administrative remedies.  *Moore v. Bennette*, 517 F.3d at 725, 729; *see Langford v. Couch*, 50 F.Supp. 2d 544, 548 (E.D. Va. 1999) ("[T]he . . . PLRA amendment made clear that exhaustion is now mandatory.").  Exhaustion requires completion of "the administrative review process in accordance with the applicable procedural rules, including deadlines." *Woodford v. Ngo*, 548 U.S. 81, 88, 93 (2006).  This requirement is one of "proper exhaustion of administrative remedies,

which 'means using all steps that the agency holds out, and doing so *properly* (so that the agency

addresses the issues on the merits).'" *Woodford* 548 U.S. at 93 (quoting *Pozo v. McCaughtry*, 286

F.3d 1022, 1024 (7th Cir. 2002) (emphasis in original). But the court is "obligated to ensure that

any defects in [administrative] exhaustion were not procured from the action or inaction of prison

officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *see Kaba v. Stepp*,

458 F.3d 678, 684 (7th Cir. 2006).

The ARP process applies to the majority of inmate complaints including allegations that

correctional officers used excessive force. COMAR 12.02.28.04(A)(7). However, the ARP

process does not apply to complaints relating to prisoner disciplinary procedures and decisions.

COMAR 12.02.28.04(B)(3). If a prisoner is found guilty of a rule violation, the prisoner is entitled

to appeal the hearing officer's guilty decision or sanction to the warden of the facility where he or

she is incarcerated. COMAR 12.03.01.30(A)(1),(2). If the prisoner does not file a written appeal

with the warden within fifteen days of receipt of the hearing officer's decision, he or she is

considered to have waived the right to appeal. COMAR 12.03.01.30(A)(3). If the warden affirms

the hearing officer's guilty finding or sanction, the prisoner may then appeal to the IGO. COMAR

12.03.01.30(C); *see also* COMAR 12.07.01.05 and .08. When filing this appeal with the IGO, the

prisoner is required to include a copy of the initial notice of inmate rule violation, the hearing

record, the appeal to the warden, and the warden's response to the appeal.   COMAR

12.07.01.04(B)(9)(b).

Here, Mahammend filed a complaint with the IGO and his complaint was dismissed as

wholly lacking in merit. (ECF No. 8-1 at 8.) Defendants have failed to provide evidence to support

their affirmative defense or to dispute Mahammend's evidence that he filed a complaint with the

IGO regarding his disciplinary proceedings. Thus, the complaint cannot be dismissed on this basis.

## B.    Baltimore City Correctional Center

Mahammend's complaint was filed pursuant to 42 U.S.C. § 1983 which provides in relevant part that: "Every *person* who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person with the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured . . ." (emphasis supplied). Baltimore City Correctional Center is not a "person" and any claim raised against it must be dismissed. *See id.*; *see also Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 & n.55 (1978) (noting that for purposes of § 1983 a "person" includes individuals and "bodies politic and corporate"); *see generally* 5 Charles Alan Wright, *et al.*, Fed. Prac. & Proc. § 1230 (2002).

## C.    Adjustment Proceedings

Mahammend's claims hinge on his dissatisfaction with the hearing officer's finding of guilt for the Notice of Infraction he was issued. His assertions that he was not read his *Miranda* rights and was not proven guilty beyond a reasonable doubt are misplaced. Prisoners retain rights under the Due Process Clause, but prison disciplinary proceedings are not part of a criminal prosecution and the full array of rights due a defendant in such proceedings does not apply. *See Wolff v. McDonnell*, 418 U.S. 539, 556 (1974) (citing *Morrissey v. Brewer*, 408 U.S. 471, 488 (1972)). In prison disciplinary proceedings where an inmate faces the possible loss of diminution credits, he is entitled to certain due process protections. These include: (1) advance written notice of the charges against him; (2) a written statement of the evidence relied on and the reasons for taking any disciplinary action; (3) a hearing where he is afforded the right to call witnesses and present evidence when doing so is not inconsistent with institutional safety and correctional concerns, and a written decision; (4) the opportunity to have non-attorney representation when the inmate is

illiterate or the disciplinary hearing involves complex issues; and (5) an impartial decision-maker. *See Wolff*, 418 U.S. at 564–66, 592. There is no constitutional right to confront and cross-examine witnesses or to retain and be appointed counsel. *See Baxter v. Palmigiano*, 425 U.S. 308, 322 (1976); *Brown v. Braxton*, 373 F.3d 501, 504-05 (4th Cir. 2004). As long as the hearing officer's decision contains a written statement of the evidence relied upon, due process is satisfied. *See Baxter*, 425 U.S. at 322, n.5. Moreover, substantive due process is satisfied if the disciplinary hearing decision was based upon "some evidence." *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455 (1985).

Federal courts do not review the correctness of a disciplinary hearing officer's findings of fact. *See Kelly v. Cooper*, 502 F. Supp. 1371, 1376 (E.D. Va. 1980). The findings will only be disturbed when unsupported by any evidence, or when wholly arbitrary and capricious. *See Hill*, 472 U.S. at 456; *see also Baker v. Lyles*, 904 F.2d 925, 933 (4th Cir. 1990); *Tyler v. Hooks*, 945 F.3d at 171-72. As long as there is some evidence in the record to support a disciplinary committee's factual findings, a federal court will not review their accuracy. The mere fact that a DOC rule governing adjustment hearings was violated, does not necessarily equate to a due process violation. *Riccio v. Fairfax*, 907 F.2d 1459, 1466 (4th Cir. 1990) ("a state does not necessarily violate the constitution every time it violates one of its rules."); *Ewell v. Murray*, 813 F. Supp. 1180, 1183 (W.D. Va. 1993) ("Even if state law creates a liberty interest, violations of due process are to be measured against a federal standard of what process is due.").

Taking Mahammend's allegations as true, as required under a Rule 12(b)(6) review, the disciplinary hearing officer's finding of guilt was not unsupported by any evidence. Mahammend admits several times in the pleadings filed with this Court that he did in fact go into the victim's cell around the time the assault occurred. While he offers an innocent explanation for his presence,

the hearing officer was free to disregard that explanation in favor of testimony or evidence she found more credible. Mahammend's assertion that there was no proof beyond a reasonable doubt that he committed an assault misses the point; his presence in the area and his entrance into the cell was enough for prison officials to believe that he was a part of the group that assaulted the victim. His claims have no merit.

In addition to the lack of merit in Mahammend's claims, his complaint for monetary damages is also subject to dismissal because the guilty finding for the disciplinary charges remains intact. "It has long been settled law . . . that a plaintiff may not challenge the validity of a disciplinary conviction through a damages suit under § 1983." *Moskos v. Hardee*, 24 F.4th 289, 295 (4th Cir. 2022), citing *Heck v. Humphrey*, 512 U.S. 477, 487 (1994), *see also Edwards v. Balisok*, 520 U.S. 641, 648 (1997) (damages claim "based on allegations of deceit and bias on the part of the decisionmaker that necessarily imply the invalidity of the punishment imposed" is not a cognizable claim under § 1983). For these reasons, Mahammend's complaint fails to state a claim upon which relief may be granted and must be dismissed.[1]

A separate Order follows.

Dated this ___7___ day of August, 2024.

FOR THE COURT:

James K. Bredar
United States District Judge

---

[1] Because the complaint will be dismissed on this basis, the Court does not address Defendants' additional claims.